FILED
2017 Jun-26  AM 10:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| GARY ENGLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. _____ |
| | ) | |
| MASTEC, INC.; THE PRUDENTIAL | ) | |
| INSURANCE COMPANY OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

**COMES NOW,** the Plaintiff, Gary England, and in support of his Complaint says as follows:

## FACTS COMMON TO ALL COUNTS

1.     The Plaintiff, Gary England, is a resident of Limestone County, Alabama.

2.     The Plaintiff was employed as a field operations manager from September 2012 to December 2013 with MasTec Network Solutions, LLC a wholly owned subsidiary of Defendant MasTec, Inc. (hereafter "MasTec").  He was covered by a long term disability plan offered by MasTec at relevant times.

3.     Defendant MasTec is, upon information and belief, a foreign corporation which does business by agent or otherwise in the state of Alabama, and which also

1

serves as the Contract Holder for the long term disability plan that is the subject of this litigation.

4.     Defendant The Prudential Insurance Company of America (hereafter "Prudential") is, upon information and belief, a foreign corporation which does business by agent or otherwise in the state of Alabama.

5.     The Plaintiff's job as field operations manager involved light physical demands and required him to have the capacity to work on average 40 hours a week with reasonable continuity throughout the year.

6.     The material duties of Plaintiff's job required him to gather materials, including lifting and carrying; standing and walking the majority of the day; help build racks; manage the various cost components of the project and quality workmanship of contractors; work closely with the contractor, architect, civil engineer and associated consultants in developing site specific value engineering options for the work; review and approve contractor payment requests; attend local meetings, approval meetings, and conferences on behalf of carrier; document and take action on items in carrier's interests; maintain relationships and act as carrier's liaison in matter associated with federal, state and municipal matters, including the city's permitting and construction inspection requirements to ensure expeditious and successful delivery of project goals and objectives; review tenant leases and requirements as they pertain to carrier's construction obligations while controlling

2

project costs; coordinate with tenant's design and construction personnel to ensure accuracy in owner's development of tenant's construction docs; serve as an information resource by coordinating tenant's work; and participate in construction meetings, resolving disputes, providing ongoing feedback, and coordinating project punch list and close-out.

7.     While employed with MasTec, the Plaintiff was a participant in an employee welfare benefit plan (hereafter "The Plan").  The Plan was underwritten and/or insured by Prudential.

8.     All claims decisions regarding the Plaintiff's short term and long term disability benefits were made by Prudential and/or by individuals who have been represented in correspondence to the Plaintiff as being employees of Prudential.

9.     Prudential was the plan administrator, and/or the agent of the plan administrator and/or *de facto* plan administrator for the Plaintiff's short term and long term disability certificate throughout the claim process.  MasTec had no involvement or discretion in the claim decision-making process for the Plaintiff's short term and long term disability plans, according to the Plaintiff's knowledge, information, and belief.  MasTec also deferred to Prudential in producing plan documents. Prudential's decisions were final and could not be changed by MasTec.

10.    The only plan document that has been provided, after written requests on both Defendants is the Booklet Certificate for long term disability.  It contains the

3

Group Insurance Certificate which notes that the benefits described are subject to the Group Contract (which has not been produced), contains no language regarding discretion, and does not identify the plan administrator—only the contract holder/employer.   Also included in the production of the Booklet Certificate is a document purporting to be the summary plan description, with a large print disclaimer that it is "not part of the Group Insurance Certificate".

11.   The Plaintiff does not have the Group Contract, despite repeated requests made to Prudential and MasTec in writing for all plan documents from May 2016 through May 2017.

12.   The Plaintiff became unable to perform the duties of his occupation on or about December 23, 2013, due to the debilitating effect of multiple impairments. These impairments included dilated cardiomyopathy and severe left global hypokinesis with a severely reduced left ventricular ejection fraction, status-post triple coronary artery bypass grafting in 1997, and status post implantation of a cardioversion defibrillator in 2008.  Plaintiff had worked for several years with his cardiac conditions and a left ventricular ejection fraction of 29%, as demonstrated on stress testing in March 2013, but had begun experiencing additional symptoms of shortness of breath, fatigue, and angina pectoris.   A treatment note dated December 23, 2013, noted that Plaintiff was diagnosed with heart disease several

years prior, but that "the course has been worsening," and indicated a treatment plan of stress reduction and limitation of physical activity.

13.    Due to his disability, MasTec authorized the Plaintiff to take leave pursuant to the Family and Medical Leave Act of 1993 ("FMLA").

14.    MasTec advised Plaintiff that while on FMLA he should continue to pay to pay premiums for short term and long term disability benefits to maintain his coverage, which Plaintiff did until he was advised by MasTec on August 1, 2016 that his FMLA eligibility was exhausted.  His employment was terminated then.

15.    Neither Prudential nor MasTec have produced the plan documents or the claim file for the short term disability benefits, despite requests in writing to both Defendants beginning in May 2016.   The Plaintiff believes the file will demonstrate inconsistency in decision making when compared to the long term disability claim decision.  Both plans are believed to have similar definitions of disability for the first 24 months of disability.

16.    Disability is defined in the long term disability certificate as follows:

You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- you are under the regular care of a doctor; and

5

- you have a 20% or more loss in your monthly earnings due to that sickness or injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury

- you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and

- you are under the regular care of a doctor.

  . . .

  Material and substantial duties means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified.

17.     The Prudential long term disability certificate further provides as follows:

If you are on a leave of absence, and if premium is paid, you will be covered to the end of the month following the month in which your leave of absence begins.  But, with respect to leave of absence under the federal Family and Medical Leave Act of 1993 (FMLA) or similar state law, if it is your employer's long term disability certificate to allow a longer period of continued coverage for FMLA leaves, this long term disability certificate will be used to determine the period of continued coverage for your FMLA leave.  Continuation of such coverage pursuant to this provision is contingent upon Prudential's timely receipt of premium payments and written confirmation of your FMLA leave by your Employer.

6

## 2014 SHORT TERM AND LONG TERM DISABILITY CLAIMS

18.    Due to his disability, the Plaintiff filed a short term disability claim.    In support of his application for benefits, Plaintiff's treating physician completed a form and noted that Plaintiff was not expected to be able to return to work.

19.    After reviewing the Plaintiff's application and supporting evidence, Prudential approved his short term disability claim, by way of letter dated February 5, 2014, and began paying benefits commencing as of January 6, 2014.

20.    On March 4, 2014, Plaintiff reported to his treating physician that his back had begun hurting that same day, "all the way up."   A lumbar x-ray revealed a compression deformity of L4 with approximately 20-30% loss of stature of the superior endplate.

21.    By way of letter dated March 4, 2014, Prudential advised Plaintiff that based on its "review of the medical information," benefits were extended through March 9, 2014.

22.    On March 6, 2014, during a telephone conversation, Plaintiff advised Prudential that he was experiencing fatigue after only five to six minutes of walking and that he had an appointment scheduled with his cardiologist in two months' time.  Plaintiff further told Prudential that his treating physician, who was located in the same office as the cardiologist and shared a nurse, had advised there was not much they could do for him at this time.

7

23.     By way of letter dated March 6, 2014, Prudential advised Plaintiff that based on its "review of the medical information," benefits were extended through March 16, 2014.

24.     On March 14, 2014, Prudential employee Charlesetta Moses noted that Plaintiff "could hardly talk to coughing and SOB."

25.     On March 18, 2014, analysis by Prudential noted that Plaintiff "meets def of dis supported by mda guidelines."

26.     By way of letter dated March 17, 2014, Prudential advised Plaintiff that his claim for short term disability was denied due to his condition being deemed pre-existing based upon an effective insured date of August 7, 2013.  Prudential later found this be an erroneous date, and under the actual effective insured date the pre-existing condition exclusion did not apply.

27.     By way of letter dated March 24, 2014, Prudential advised Plaintiff that his short term disability claim had been overpaid in the amount of $9,265.00.  This was based on the false pre-existing condition contention.

28.     On March 25, 2014, Plaintiff underwent echocardiogram testing which demonstrated severe global hypokinesis, mildly dilated right and left ventricles, and an estimated ejection fraction (hereafter "EF") of 20%.  It was noted in the report that there was no significant change from 2011, when the EF was noted to be 23%.  However, March 2013 stress testing had demonstrated an EF of 29%.

8

29.     On April 17, 2014, the Plaintiff's primary treating physician, Dr. James Walker, faxed to Prudential his response to a capacities questionnaire.  Dr. Walker indicated that Plaintiff could occasionally (1%-33%) climb stairs or ladders, occasionally lift and carry only up to ten pounds and never more, and occasionally stoop, kneel/crawl and reach at desk level and overhead.  Dr. Walker noted that Plaintiff would not be able to return to work, and that his opinion was based on both active findings and self-reported symptoms.

30.     On May 5, 2014, Plaintiff underwent electrocardiogram (hereafter "ECG") testing, which demonstrated abnormal ventricular premature complex, anterior infarct old, and non-specific t-wave abnormalities.   Plaintiff's cardiologist, Dr. Ramesh Subramaniyam, noted that he does have severe left ventricular dysfunction and coronary artery disease, which are "fairly stable" when on optimal meds.  Dr. Subramaniyam noted that Plaintiff had problems and hypotension with a higher dose of Coreg in the past, so "won't increase."

31.     On May 6, 2014, Plaintiff appealed the denial of the short term disability claim, noting that the effective date given in the denial letter was wrong.

32.     On May 7, 2014, Prudential's claim notes detail a decision to "Re-Approve" the claim, finding the Plaintiff had coverage effective October 1, 2012, and the pre-existing exclusion should not have applied, noting "re open claim and r/o to LTD."

Prudential again noted that Plaintiff "meets def of dis supported by mda guidelines."

33.    By way of letter dated June 10, 2014, Prudential advised the Plaintiff that his application for long term disability benefits was denied and the short term disability benefits remained terminated effective March 17, 2014, because, "[a]lthough you report fatigue and shortness of breath impacting your ability to work, there is no documented change in your physical examinations or testing at the time you went out of work.  Your cardiologist documented that you were clinically stable, and there have been no medication changes or referrals to a specialist.  Based on the information on file, there is no support for medically necessary restrictions that would impact your functional capacity."  There was no reference to the "mda guidelines," which Prudential found supported the Plaintiff's claim for benefits only a short time prior to the denial, and there was no evidence of improvement in the Plaintiff's condition since the recent finding that he met the definition of disability.

34.    Prudential based its June 10, 2014 decision upon a review by its nurse consultant, Elizabeth Noiles, who noted that Plaintiff had worked with a low ejection fraction for years, had an ICD (pacemaker) since 2008, had a normal chest x-ray in March 2014, and there was no referral to a cardiologist when Plaintiff's symptoms worsened.  Nurse Noiles noted that "The cardio AP states that no

10

medication changes are needed due to EE being on optimal medications," opined that there was no change in Plaintiff's physical exam findings from pre-LDW (last date worked) and there is "no documented medical reason to restrict the EE from a pre-LDW level of functional capacity at this time in regard to his cardiac condition." She made no effort to ensure any consistent decision making by Prudential and gave no rationale for why Plaintiff was found to meet the definition of disability for STD for the same time period.

35.     On August 6, 2014, Plaintiff saw his cardiologist, Dr. Subramaniyam, complaining of more angina, chest discomfort, shortness of breath, tiring easily, and lower extremity edema after sitting while driving.  Physical exam documented bilateral lower extremity edema.  Dr. Subramaniyam noted that, "In fact, he was not able to keep up with the duties required of his last job several months ago. Given his history of coronary disease and myocardial infarction in the past, we will proceed with another stress test . . ."

36.     On August 18, 2014, Plaintiff underwent a nuclear stress test, which revealed chest discomfort in the recovery period after exercising a total of five minutes and five seconds, and imaging revealed a moderate size inferior perfusion defect, an anteroapical defect, and severe left ventricular systolic function with a dilated left ventrical and global hypokinesis.

11

37.    On September 25, 2014, Plaintiff was seen by Dr. Subramaniyam, who noted that the inferior and anteroapical defects compared with the previous stress test from 2013 (pre-dating the last date worked) "appears to be a significant change."  He noted that the Plaintiff's symptoms may be indicative of somewhat worsening volume status and angina.

38.    On October 7, 2014, Plaintiff underwent cardiac catheterization, which revealed the vein graft to the right coronary artery (from previous bypass grafting) was degenerated with a long area of 75% stenosis followed by a more focal 80% lesion in the mid part.  Two drug eluting stents were deployed.

39.    On October 17, 2014, Plaintiff saw Dr. Subramaniyam in follow up. Plaintiff had less chest pain, but was not at full activity.  Dr. Subramaniyam noted that "Clearly there has been a change in his clinical status.  He has had some unstable angina recently and this will likely affect his overall functional capacity."

40.    On October 20, 2014, the Plaintiff's cardiologist, Dr. Subramaniyam, faxed to Prudential his October 17, 2014 response to a capacities questionnaire from the Plaintiff.  Dr. Subramaniyam indicated that Plaintiff could occasionally (1%-33%) lift and carry only up to ten pounds and never more, could never climb stairs or ladders, never balance/heights, and could only occasionally (1%-33%) stoop, kneel/crawl, reach at desk level and overhead.

12

41.     On October 20, 2014, Dr. Subramaniyam also faxed to Prudential his letter dated October 17, 2014, wherein he opined that Plaintiff was a long-time patient with severe ischemic cardiomyopathy with severe left ventricular dysfunction.  He stated that Plaintiff had recently been complaining of angina and underwent a stress test that was abnormal, and subsequently underwent cardiac catheterization, which revealed severe stenosis in the saphenous vein graft to the right coronary artery and underwent stenting.   Dr. Subramaniyam advised that "Overall, his functional capacity is decreased because of the severe left ventricular systolic dysfunction and he seems to be having stable angina symptoms at this time.  He is on maximum medical therapy and I have referred him for cardiac rehabilitation if possible.  Regarding his ability to perform his duties, he would be able to perform only light duty and he apparently does have other health issues that would prevent him from sitting for long periods of time as well.   Accordingly, I would recommend that he consider going on disability and optimizing his health condition.  Feel free to contact me any with further questions."

42.     Prudential treated Dr. Subramaniyam's submissions as Plaintiff's appeal of the June 10, 2014 denial/termination of benefits, and, by way of letter dated October 29, 2014, advised Plaintiff that they expected to make a determination by December 3, 2014.

43.     By way of letter dated December 5, 2014, two days after the expiration of the initial 45 review period, Prudential notified Plaintiff that it was unable to complete review of the claim and needed an extension of up to 45 days and expected to make a decision by January 17, 2015.

44.     On December 22, 2014, Plaintiff wrote to advise Prudential that, based upon his doctors' recommendations, he was unable to perform the material and substantial duties that are normally required for the performance of any occupation.  Plaintiff requested that, if Prudential was in disagreement, they should perform an occupational review to go over the specific differences.

45.     On December 22, 2014, Plaintiff also submitted the November 3, 2014 report of independent medical examiner, Dr. Keith Anderson.  Dr. Anderson's impression included chronic cervical and lumbar pain secondary to previous compression fractures with cervical stenosis and lumbar degenerative joint disease with decreased range of motion of the cervical and lumbar spine; history of cardiac artery bypass grafting with stents placed and a history of chronic heart failure and angina; can walk about a block before becoming short of breath; depression and anxiety; and gout with two or three flare ups a year.  Dr. Anderson stated that he felt Plaintiff is 100% medically disabled and cannot return to any type of productive employment, noting that he has chronic pain syndrome as well as

significant increased risk for myocardial infarction.  Dr. Anderson noted Plaintiff already has angina and encouraged Plaintiff to apply for Social Security disability.

46.     On December 22, 2014, Plaintiff also submitted an October 23, 2014 letter from Dr. James Walker, which stated that Plaintiff was a long-time patient with multiple medical problems, including degenerative disc disease, ischemic cardiomyopathy, gout, and hypertension.  Dr. Walker noted that Plaintiff had been having issues with fatigue and shortness of breath related to his underlying medical problems, and stated that he "certainly" considered Plaintiff disabled.

47.     On appeal, Prudential ordered a physician medical record review from its vendor MCMC.

48.     Prudential frequently uses MCMC as a vendor because it is known for providing insurance companies with opinions supportive of the denial of disability benefits.

49.     The physician used by Prudential for this review provided a report, dated January 6, 2015, that failed to consider all the information provided to him.

50.     Without ever examining the Plaintiff, the reviewing cardiologist, Dr. Raye Bellinger, discounted the assessments and opinion of Plaintiff's cardiologist and did not acknowledge the opinions of the primary treating physician.  Dr. Bellinger stated that Plaintiff had no medically necessary restrictions or limitations from December 2013 through September 26, 2014, nor from October 2, 2014 forward.

15

Dr. Bellinger attempted to rebut the opinion of Dr. Subramaniyam, that Plaintiff's functional capacity is decreased because of the severe left ventricular systolic dysfunction and angina symptoms, by stating that the medical records indicate a reasonable exercise tolerance prior to undergoing stenting and the only period in which restrictions would be necessary would be from September 27, 2014 through October 1, 2014, a period of time which appears to bear no relationship to either the August 19, 2014 nuclear stress test, which revealed the perfusion defects that had been causing Plaintiff's symptoms, or the October 7, 2014 cardiac catheterization, when two drug-eluting stents were placed in the stenotic areas.

51.    Dr. Bellinger's opinion that Plaintiff had no medically necessary restrictions or limitations on October 7, 2014, the very date Plaintiff was undergoing cardiac catheterization and stenting, is demonstrative of the incompetence of his review, for which he received $1,125.00.  Furthermore, Dr. Bellinger's opinion that there were no medically necessary restrictions and limitations from December 2013 until September 27, 2014, is in conflict with Prudential's determination that Plaintiff met the mda guidelines for disability and Prudential's definition of disability, from December 23, 2013 through March 16, 2014.

52.    Via a letter dated January 7, 2015, Prudential advised Plaintiff that it had determined that his medical condition and symptoms do not rise to the level of severity which would preclude him from performing the material and substantial

16

duties of his regular occupation, and upheld the prior decision to terminate the short term disability claim and disallow the long term disability claim. Prudential further advised that it had not completed a formal vocational assessment of his occupation "given the lack of medically necessary restrictions and limitations." Prudential advised that Plaintiff could appeal for a final decision from the Prudential's Appeals Unit, and noted that this voluntary appeal would not affect his rights to sue under ERISA.

53.     Prudential's denial letter relied upon the opinion of the peer reviewer, Dr. Bellinger, and echoed that physician's error in assessing a limited period of disability which did not even encompass the date of Plaintiff's cardiac catheterization and stenting, stating "There is no evidence you would require restriction and/or limitations with the exception of the period continued above from September 27, 2014 through October 1, 2014,"

54.     By way of letter dated January 15, 2015, Plaintiff advised Prudential of his intent to appeal, and requested a copy of the file as well as a list of all material and substantial duties of his occupation.

55.     On April 20, 2015, Plaintiff had an abnormal stress test, with angina after four minutes and 42 seconds of total exercise and an exaggerated blood pressure response.

56.    On April 22, 2015, Plaintiff saw cardiologist Dr. Crystal Walker who noted that the angina was likely due to worsening disease given the new defect in the anterior region on stress testing, and recommended repeat left heart catheterization to evaluate for obstructive disease.

57.    On May 5, 2015, Plaintiff underwent repeat cardiac catheterization and was found to have severe in-stent restenosis, and two more drug-eluting stents were deployed.   Plaintiff was found to have a markedly depressed left ventricular ejection fraction of 15-20%, and severe three vessel coronary artery disease. Continuation of aggressive risk factor modification and medication therapy was recommended.

58.    On June 5, 2015, Plaintiff wrote to advise Prudential of the recent heart catheterization and stenting, and noted his concerns with Prudential's finding that Dr. Walker had not changed his medications in December 2013, noting that his records confirm that he is on optimal medications.  He noted that he had reported mental lapses to his cardiologist, who advised that a CT scan could be done, but if they found anything there would be nothing they could do, because he is already on optimal medications.  Plaintiff requested that Prudential send him to a reputable physician of their choosing if they still had doubts regarding the severity of his conditions.   Plaintiff pointed out that he had requested a list of the material and substantial duties of his occupation so that he could ask his physicians to respond

18

specifically about his ability to meet these requirements, but Prudential did not respond to this request.

59.     On June 16, 2015, Dr. James Walker faxed his response to a capacity questionnaire requested by Prudential.  Dr. Walker indicated that Plaintiff could occasionally (1%-33%) lift and carry only up to ten pounds and never more, could never climb stairs or ladders, and could only occasionally stoop, and occasionally reach at desk level and overhead.  Dr. Walker indicated that in his medical opinion Plaintiff did not have either full-time nor part-time work capacity, and did not have work capacity that included standing/walking.

60.     Prudential sought an addendum report from the same physician reviewer utilized in the first appeal.  In an addendum dated June 15, 2015, Dr. Bellinger reiterated that his prior opinion was unaltered and Plaintiff would have no restrictions and limitations.

61.     Prudential requested a second addendum from Dr. Bellinger.  In his second addendum, dated June 20, 2015, Dr. Bellinger stated that the additional medical records do not provide any new information, his opinion remained unchanged, and restrictions and limitations do not apply.

62.     Via a letter dated July 29, 2015, Prudential upheld the denial of benefits and advised that all administrative remedies had been exhausted.

63.     Prudential also notified MasTec, by way of letter dated July 29, 2015, that it had upheld the denial of benefits and noted that "this decision is final and cannot be appealed further to Prudential."

64.     The Plaintiff has remained unable to perform any job on a full-time basis, and his claim has been denied due to Prudential's failure to accurately interpret and account for the medical evidence and the opinions of the Plaintiff's physicians.

65.     On October 8, 2015, Plaintiff had a hearing before an Administrative Law Judge ("ALJ").  A fully favorable decision was rendered on November 24, 2015. The ALJ found that Plaintiff had been disabled since December 23, 2017, due to severe impairments of ischemic heart disease, chronic heart failure, degenerative disc disease, and obesity.  In reaching his decision, the ALJ specifically noted that the demands of Plaintiff's past relevant work exceeded his residual functional capacity.

## 2016 LONG TERM DISABILITY CLAIM

66.     Plaintiff's condition continued to deteriorate and he continued to seek medical treatment.

67.     Plaintiff continued to be employed by MasTec and to pay premiums for long term disability benefits as an employee on FMLA status.   Upon Plaintiff's information and belief, MasTec considered the Plaintiff to be on leave.

68.    By way of letter dated May 16, 2016, Plaintiff requested from Prudential a complete copy of the plan documents, claim record, and claim manual.

69.    By way of letter dated May 17, 2016, Plaintiff advised Prudential that he remained on medical leave and remained covered under the long term disability benefits plan, and gave notice of a new claim for benefits.   Plaintiff requested Prudential provide all documents and forms it deemed necessary to perfect or advance the claim.

70.    No response was made by Prudential to the May 17, 2016 letter.

71.    Plaintiff wrote to MasTec on May 18, 2016, to advise that, as he remained on leave and had continued to pay long term disability premiums, he desired to file a new claim for benefits and requested MasTec provide all forms and information necessary.

72.    No response was made by MasTec to the May 18, 2016 letter.

73.    On June 14, 2016, Plaintiff sent a second notice to MasTec, again advising of his desire to file a new long term disability claim and requesting all forms and information necessary to do so.

74.    No response was made by MasTec to the June 14, 2016 letter.

75.    By way of letter dated August 1, 2016, MasTec advised that Plaintiff's "FMLA eligibility has exhausted" and his employment was officially terminated. MasTec enclosed a check purporting to be a refund for all long term disability

21

premiums paid by Plaintiff for the time period from the date of Prudential's first denial of long term disability through August 1, 2016.

76.     By way of letter dated August 26, 2016, Plaintiff returned the unnegotiated check to MasTec, advising that he had remained an employee until August 1, 2016, he had paid long term disability premiums, MasTec had led him to believe that he remained eligible to receive a long term disability benefit, and because of this representation he had not obtained a different long term disability coverage, as he was relying on the benefit for which he had been paying.  Plaintiff advised that he had made a new claim for benefits, and had provided notice of the claim to Prudential on May 17, 2016, and to MasTec on May 18, 2016.  Plaintiff requested that MasTec advise immediately whether it had notified Prudential of Plaintiff's FMLA leave and whether it had timely submitted Plaintiff's premium payments to Prudential.

77.     No response was made by MasTec to the August 26, 2016 letter.

78.     By way of letter dated October 4, 2016, Plaintiff advised Prudential that the claim for which notice was provided on May 17, 2016 was deemed exhausted, due to Prudential's failure to make a decision, or indeed even communicate at all.  Plaintiff noted that it appeared futile to appeal the claim, but asked that Prudential advise whether he was required to appeal Prudential's lack of action and decision-making.  Plaintiff demanded a complete copy of the claim file, including all

22

correspondence and communications with MasTec from January 1, 2013 through the date of response. Plaintiff further advised that he would be asserting a claim for breach of fiduciary duty against both MasTec and Prudential, and requested that Prudential advise if there were any procedures he must exhaust before filing suit.

79. By way of letter dated October 4, 2016, Plaintiff advised MasTec that he had continued to pay long term disability premiums based upon representations from MasTec that he would continue to maintain that coverage so long as his employment was not terminated and the premiums were paid. Plaintiff further advised that, if he was not entitled to the coverage, his reliance upon those representations had been to his detriment and he would be asserting claims against both MasTec and Prudential for breach of fiduciary duty. Plaintiff requested copies of all communications between himself and MasTec, and between MasTec and Prudential, for the time period of January 1, 2013 through the date of response. Plaintiff further requested a copy of his entire employment file and the entire disability claim file, and provided MasTec with a copy of his October 4, 2016 letter to Prudential.

80. No response was made by MasTec to the October 4, 2016 letter.

81. On October 20, 2016, Prudential's claim notes indicate that a Peer Claim Discussion was held to discuss Plaintiff's October 4, 2016, letter and it was

23

determined Prudential needed to reach out to MasTec for clarification before responding.

82.   On October 20, 2016, Prudential employee Dusti LaFlamme sent an email to MasTec asking for "clarification regarding the handling of his premiums." Prudential sought answer to specific questions: a) "why premiums continued to be collected beyond the time period he stopped working";   b) whether there was "discussion around the premium payment between MasTec and Mr. England"; c) "at what point was he no longer eligible to contribute towards the premium"; and d) "why the premiums were refunded."

83.   No written response from MasTec to Prudential's questions is found in the claim record provided. MasTec responded by email indicating that it had "actually . . . requested a meeting for tomorrow with Michelle to discuss the case" and inquired if Ms. LaFlamme would be available then.

84.   Prudential's claim notes indicate that MasTec stated premiums continued to be paid and accepted by MasTec through August 1, 2016, while Plaintiff was "on a leave of absence and so he can maintain eligible."

85.   Prudential's claim notes further indicate that MasTec indicated that when it "realized the termination was upheld on 2nd appeal and no additional appeal, ER told him to stop submitting premiums." This is belied by MasTec's statements to Prudential regarding continued acceptance of premiums for more than a year after

24

it was notified by Prudential of the second level denial and exhaustion of administrative remedies on July 29, 2015, and by MasTec's August 1, 2016, letter to Plaintiff terminating his employment due to exhaustion of FMLA coverage. It is further belied by MasTec's December 9, 2015, letter to Plaintiff which advised Plaintiff of updated premiums for 2016, and his responsibility "for ensuring that your benefit premiums are paid while out on leave."

86.    On October 27, 2016, Prudential acknowledged it was in receipt of Plaintiff's October 4, 2016 letter, and asked for clarification regarding the date of disability for the new claim and the disabling condition.

87.    On October 28, 2016, Plaintiff advised Prudential that the date of disability for the new claim was May 1, 2016, based upon his disabling conditions of coronary artery disease, lumbar and cervical degenerative disc disease, cervical spondylosis, cervical stenosis C3-C4 and C5-C6, chronic pain, fatigue, chest pain with exertion, and shortness of breath on mild exertion.

88.    By way of letter dated November 17, 2016, Prudential advised that it was aware that Plaintiff had paid premiums through August 1, 2016.   Prudential advised, however, that Plaintiff had had long term disability coverage only to the end of the month following the month in which his leave of absence began, that he had not returned to a covered class following his last day of work December 20, 2013, and that he could not file a new claim.  No appeal rights were given.

89.   By way of letter dated May 7, 2017, Plaintiff requested from Prudential "a complete copy of Mr. England's claim files for the short-term disability claim and both long-term disability claims, the claim manual(s), including all documents, records, policies and procedures, and any other information relevant to Mr. England's claims for benefits, which is to include the MD Guidelines utilized in the claim determinations".

90.   By way of letter dated May 7, 2017, Plaintiff requested from MasTec "the summary plan description and all plan documents that govern Mr. England's claim process for both short-term and long-term disability, including, but not limited to: 1) Group Contract; 2) Group Insurance Contract (COV); 3) Group Contract Schedule (GCS); 4) Schedule of Premium Rates (SPR); 5) General Rules (GR); 6) Schedule of Plans (SCH); 7) MasTec, Inc., Application for Group Contract (APP); 8) Benefit Highlights (CBH); 9) Table of Contents (CTC); 10) Certificate of Coverage (CERT); 11) General Provisions (CGP); 12) Disability Coverage Benefit Information (CGI); 13) Disability Coverage, Other Benefit Features (COTB); 14) Disability Coverage, Other Services (COTS); 15) Disability Coverage, Rehabilitation Services (CRS); 16) Disability Coverage, Claim Information (CCLM); 17) Glossary (CGL); 18) Summary Plan Description (SPD)," as well as "a complete copy of Mr. England's claim files for the short-term disability claim and both long-term disability claims, the claim manual(s), including all documents,

26

records, policies and procedures, and any other information relevant" to the claims "to include the MD Guidelines utilized in the claim determinations".

91.    On May 16, 2017, Prudential sent what it purported to be the long term disability claim file to include "copies of claim forms, medical information reviewed by Prudential, correspondence, records pertaining to telephone calls, claim file notes regarding our internal claim review and analysis and the Booklet Certificate with respect to the Applicable Group Policy." In response to Plaintiff's request for the claims manual, Prudential provided only a copy of its Group Disability Memorandum.

92.    On June 6, 2017, MasTec employee Lourdis telephoned the office of Plaintiff's attorney and advised that Prudential had already provided a response to Plaintiff's May 5, 2017, letter and, therefore, MasTec would not be providing a separate response.

93.    Neither Defendant has produced the STD plan documents, STD claim file, the LTD Group Contract, claims manual, policies and procedures, or the mda guidelines utilized in the STD claims decision.

       (a) May 16, 2016, request for LTD plan documents, claim file, claim manual, and all relevant information;

       (b) October 4, 2016, request for complete copy of claim file and all relevant information;

(c) May 7, 2017, detailed requests for STD and LTD plan documents, complete copies of STD and LTD claim files, claim manuals, policies and procedures, and all relevant information including the guidelines utilized.

94.    MasTec had advised Plaintiff that he was on FMLA from December 20, 2013 forward – which was confirmed by MasTec's August 1, 2016 letter advising that his FMLA had exhausted – and collected premiums for the coverage.   The long term disability certificate specifies that,

> If you are on a leave of absence, and if premium is paid, you will be covered to the end of the month following the month in which your leave of absence begins.   **But, with respect to leave of absence under the federal Family and Medical Leave Act of 1993 (FMLA) or similar state law, if it is your employer's long term disability certificate to allow a longer period of continued coverage for FMLA leaves, this long term disability certificate will be used to determine the period of continued coverage for your FMLA leave.** Continuation of such coverage pursuant to this provision is contingent upon Prudential's timely receipt of premium payments and written confirmation of your FMLA leave by your Employer (emphasis added).

95.    The Plaintiff relied upon MasTec's representation that he remained covered and eligible for group benefits, and did not seek separate long term disability coverage.   He continued to pay premiums for the group coverage.

96.    On information and belief, Prudential had knowledge that Plaintiff remained on FMLA leave, and continued to accept premiums.

97.    Prudential has waived its right to assert that Plaintiff was not eligible for coverage, as, on information and belief, it was on notice that Plaintiff remained on FMLA leave, and Prudential continued to accept payment of premiums for years.

98.    The Plaintiff has exhausted all administrative remedies and/or further efforts by the Plaintiff to exhaust remedies would be futile.

99.    The Plaintiff has remained unable to perform any job on a full-time basis, and his claim has been denied due to Prudential's failure to accurately interpret the long term disability certificate terms.

100.    The Plaintiff has been harmed by the actions of Prudential and MasTec.

101.    The Plaintiff has exhausted all claim remedies, and any further efforts to exhaust claim remedies is futile.  Futility is demonstrated by the refusal of both Defendants to consider the Plaintiffs' claims and the refusal to provide any further appeals or claim remedies prior to filing suit.

## COUNT I
## SHORT TERM DISABILITY BENEFITS CLAIM

102.    Plaintiff incorporates by reference Paragraphs 1 through 62 of this Complaint as if set out in full.

103.    This Count is brought under 29 U.S.C. § 1132(a)(1)(B) and seeks to recover benefits, damages, and attorney's fees as may be recoverable under this code

provision and 29 U.S.C. § 1132(g).  The Plaintiff seeks to enforce his rights under the Plan in question.  The Plan is an employee benefit plan that appears to be regulated by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

104.  As set forth above, Defendant Prudential wrongfully, and in violation of obligations under ERISA, denied his claim for short term disability benefits.

**WHEREFORE**, the Plaintiff demands judgment against Defendant Prudential as follows:

> a.  For a declaration and determination that the Plaintiff is entitled to short term disability benefits;
>
> b.  For the sum of all past due short term disability benefits with interest;
>
> c.  For an award of attorney's fees, case expenses and costs of this action; and
>
> d.  For such other further or different relief as may be just and proper under 29 U.S.C. § 1132(a)(1)(B).

**COUNT II**
**2014 LONG TERM DISABILITY BENEFITS CLAIM**

105.  Plaintiff incorporates by reference Paragraphs 1 through 62 of this Complaint as if set out in full.

30

106.   This Count is brought under 29 U.S.C. § 1132(a)(1)(B) and seeks to recover benefits, damages, and attorney's fees as may be recoverable under this code provision and 29 U.S.C. § 1132(g).  The Plaintiff seeks to enforce his rights under the Plan in question.  The Plan is an employee benefit plan that appears to be regulated by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

107.   As set forth above, Defendant Prudential wrongfully, and in violation of obligations under ERISA, denied his claim for long term disability benefits.

**WHEREFORE**, the Plaintiff demands judgment against Defendant Prudential as follows:

a.   For a declaration and determination that the Plaintiff is entitled to long term disability benefits;

b. For the sum of all past due long term disability benefits together with interest;

c. For a declaration of the right to all present and future disability benefits under the Plan; and

d. For an award of attorney's fees, case expenses and costs of this action.

## COUNT III
## 2016 LONG TERM DISABILITY BENEFITS CLAIM

108.   Plaintiff incorporates by reference Paragraphs 63 through 83 of this Complaint as if set out in full.

109.   This Count is brought under 29 U.S.C. § 1132(a)(1)(B) and seeks to recover benefits, damages, and attorney's fees as may be recoverable under this code provision and 29 U.S.C. § 1132(g).  The Plaintiff seeks to enforce his rights under the Plan in question.   The Plan is an employee benefit plan that appears to be regulated by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

110.   As set forth above, Defendant Prudential wrongfully, and in violation of obligations under ERISA, failed to consider the Plaintiff's claim for long term disability benefits. As a result, the claim was deemed exhausted under the Plan in question and under the legal requirements of a full and fair review.

111.   A *de novo* review is required in evaluating this claim decision as a result of the failure to exercise any discretion during the time limits permitted by the Plan and as permitted by law.

**WHEREFORE**,   the  Plaintiff  demands  judgment  against  Defendant Prudential as follows:

32

a. For a declaration and determination that the Plaintiff is entitled to long term disability benefits;

b. For the sum of all past due long term disability benefits together with interest;

c. For a declaration of the right to all present and future disability benefits under the Plan;

d. For an award of attorney's fees, case expenses and costs of this action; and

e. For such other relief as may be just and equitable and proper.

## COUNT IV
## BREACH OF FIDUCIARY DUTY CLAIMS

112. The Plaintiff incorporates by reference Paragraphs 63 through 83 of this Complaint as if set out here in full.

113. This Count is brought in the alternative to Count III. pursuant to 29. U.S.C. § 1132 (a)(3).

114. The Defendant MasTec had a fiduciary obligation to communicate to the Plaintiff and other plan participants accurate and clear information as the plan sponsor and/or as a plan administrator for purposes of eligibility to continue coverage for long term disability.

33

115. The Defendants, Prudential and MasTec, had fiduciary obligations to deal honestly, fairly, equitably, and in the best interest of plan participants.

116. As noted above, and incorporated here by reference, the Defendant MasTec represented to the Plaintiff that he would remain covered by his long term disability benefit while on medical leave, provided he paid the premiums. Premiums were accepted by MasTec and sent to Prudential through approximately August 1, 2016.

117. The Plaintiff, while too sick to perform his own occupation, hoped that at some point he may regain the ability to work.  Accordingly, he kept paying for the long term disability benefit and did not pursue any other long term disability plans for coverage.

118. Prior to August 1, 2016, the Plaintiff reconciled himself to the fact that he would not be able to return to full-time work at any time in the near future.

119. The Plaintiff had paid all premiums and remained on medical leave at the time he filed a second claim for long term disability benefits in 2016.

120. The Plaintiff gave notice of his claim to Defendants Prudential and MasTec in May 2016, as noted above.

121. Defendant Prudential, however, failed to consider this claim within the time limits provided by the Plan and the law.  The claim was therefore deemed exhausted.

34

122. The Defendant MasTec, never responded by providing forms or other information necessary for the long term disability claim. Instead, the Defendant terminated the Plaintiff's employment on or about August 1, 2016 and attempted to refund all premiums paid. The Plaintiff refused the premiums and returned them to the Defendant.

123. The Defendant Prudential never made a claim decision within the time limits provided by the Plan and by law. Both Defendants failed to provide any direction regarding exhaustion of breach of fiduciary duty claims, and so those claims also have been deemed exhausted.

124. After the claim was deemed exhausted, and by letter dated November 17, 2016, Defendant Prudential contended that the Plaintiff could not be covered by the Plan, although premiums had been collected through August 1, 2016.

125. Given that no claim decision was made within the time limits provided by law, all claims were deemed exhausted prior to Prudential's letter of November 17, 2016.

**WHEREFORE,** the premises considered, Plaintiff seeks equitable relief as provided and allowed under the provisions and for specific equitable relief under 29 U.S.C. § 1132 (a)(3) as follows:

a. For an injunction against the Defendants from further interference with the Plaintiff's long term disability claim;

b.  For a surcharge or restitution against the Defendants in an amount equal to the amount that the Plaintiff should receive for long term disability benefits and continuing until the long term disability plan or long term disability certificate would cease paying benefits;

c.  For a court order directing the Defendants to pay for an unbiased and neutral third party administrator of the Court's choosing to conduct further evaluations of the Plaintiff's claim;

d.  For an award of attorney's fees;

e.  For declaratory relief that the Plaintiff is entitled to a *de novo* review of his second long term disability claim;

f.  For restitution of unpaid benefits irrespective of any disability finding together with interest; and

g.  For such other equitable relief as the Court may provide and find to be just and proper.

## COUNT V
## <u>Statutory Penalty Claims</u>

115.   The Plaintiff incorporates by reference Paragraphs 1 through 90 of this Complaint.

116.   This Count is brought pursuant to 29 U.S.C. § 1132(c).

117.    The Plaintiff made a request for all long term disability plan documents, including the Group Contract, all short-term disability plan documents, and all claim manuals, including the MDA guidelines on MasTec and Prudential.

118.    The Plaintiff made a request for all long term disability plan documents, all short-term disability plan documents, and all claim manuals including the MDA guidelines on Prudential and MasTec.

119.    Neither Defendant has produced all of the required documents.

120.    The Defendants had an obligation as "any administrator," or as entities assuming the duties of "any administrator," to comply with requests for information, which was required by law to be furnished under 29 U.S.C. § 1132(c). Under 29 U.S.C. § 1029, the Secretary of Labor prescribes what documents must be furnished.   Under 29 U.S.C. § 1133, the Secretary of Labor has legislative authority to prescribe regulations to make certain that a denial of a participant's claim sets forth specific reasons for the denial and to allow the participant a full and fair review of the claim.   Under 29 C.F.R. § 2560.503-1, the participant is entitled to have reasonable access to all information relevant to a claim for benefits.

121.    The Defendants have breached these duties.

        **WHEREFORE**, the Plaintiff demands judgment against the Defendants as follows:

37

(a.) For an award of penalties for the maximum allowed by law per day for each day the Defendants did not respond to information for which they were required to respond;

(b.) For an award of attorney's fees; and

(c.) For such other further relief as may be just and proper under 29 U.S.C. § 1132(c).

David P. Martin
(ASB-3500-M68D)

**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
davidpmartin@erisacase.com

**Plaintiff's Address:**
Gary England
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL  35402

38

**Defendants' Address:**

MasTec, Inc.
Attention:  Human Resources Department
800 South Douglas Road
12th Floor
Coral Gables, FL 33134

The Prudential Insurance Company of America
c/o C T Corporation
2 North Jackson Street
Suite 605
Montgomery, AL  36104

**To be served regarding the statutory penalty claim:**

Secretary of Labor
c/o R. Alexander Acosta
200 Constitution Avenue N.W.
Washington, D.C.  20210

Secretary of Treasury
c/o Steven T. Mnuchin
1500 Pennsylvania Avenue N.W.
Washington, D.C.  20220